**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RANDY ROSS LENHART, | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil Action No. 10-218J |
| | ) Judge Arthur J. Schwab |
| GERALD L. ROZUM; DISTRICT | ) |
| ATTORNEY OF THE COUNTY OF | ) |
| SOMERSET, PA; ATTORNEY | ) |
| GENERAL OF THE STATE OF | ) |
| PENNSYLVANIA, | ) |

## MEMORANDUM OPINION

This habeas case, filed pursuant to 28 U.S.C. § 2254, was only recently transferred to this author after the Honorable Kim R. Gibson recused himself. ECF No. 60. Regrettably, this case has been pending for a long time due, in no small part, to the failure of the Office of the Somerset County's District Attorney to file an adequate answer and/or to obey orders of the Court.

Randy Ross Lenhart ("Petitioner") was convicted of Unlawful Restraint, Simple Assault and Resisting Arrest in connection with his driving a teenaged girl around the area of Somerset, Pennsylvania, traveling through both Somerset and Westmoreland Counties. The crimes occurred in January 2003. The victim, Carla Humberson, testified at Petitioner's trial and described her actions in repeatedly asking Petitioner to either take her home or take her to her sister's home, and Petitioner's repeated refusals to comply. The victim testified that at one point, she attempted to get out of the car but Petitioner threatened her with a knife. State police troopers who effectuated Petitioner's arrest testified at Petitioner's trial as to how Petitioner fought their attempts to handcuff Petitioner. Petitioner did not take the stand to testify at his

trial due to a 1980 conviction for rape. Having heard all of the testimony, the jury convicted

Petitioner of all three criminal charges. Petitioner now brings the present federal habeas Petition

pursuant 28 U.S.C. § 2254 in order to challenge those convictions. Because Petitioner has

procedurally defaulted all but two of his claims, he fails to show entitlement to relief. As to the

two claims that Petitioner did not procedurally default, Petitioner fails to show that the State

Courts' adjudication of those claims constituted a disposition that was contrary to or an

unreasonable application of United States Supreme Court precedent. Accordingly, the Petition is

denied.

## A. FACTUAL HISTORY

In its opinion affirming the denial of post-conviction relief, the Pennsylvania Superior

Court recounted the facts of this case as follows:

> [In] the late evening hours of January 22, 2003, [Appellant] went to the residence of Elizabeth Barron, in the Village of Friedens, [] in Somerset County, and spoke to Barron's teen-aged daughter, Carla Humberson. At the time, Barron was at work. Both women knew [Appellant] because Barron had lived for a time with [Appellant's] sister. Humberson informed [Appellant] that her mother was not home and went to her bedroom. At approximately 3 to 4:00 A.M. on the morning of January 23, 2003, [Appellant] returned to the home and awakened Humberson telling her that he had left her younger brother [who was about 15 years old at that time] at a local Sheetz store and that he needed her to accompany him to find her brother. Humberson accompanied [Appellant] because she was concerned about the boy, for whom she was responsible because their mother was at work, although she was uncomfortable being with [Appellant].
> While traveling from Friedens into Somerset, [Appellant] traveled on back roads, indicating that he was afraid the police were looking for him [at the time, Petitioner was on parole from his 1980 rape conviction]. They arrived in Somerset, drove around the Sheetz parking lot and left again, this time traveling to [Appellant's] home in Bakersville, also in Somerset County. [Appellant] went into the house, saying he had to plug in his electronic monitor, while Humberson stayed in the car. When [Appellant] returned to the car, Humberson asked him to take her home. [Appellant] asked her if there was anyone with whom she could stay in Bakersville but she said no. Humberson testified that she was afraid she would get hurt if she got out of the car. [Appellant] drove off, taking more back

2

roads, until they arrived in Donegal, where she recognized the BP gas station. [Appellant] told her that he would drop her off there and she could call her mother, but when they arrived at the gas station [Appellant] stated that the police were there and kept driving.

Humberson asked [Appellant] to drop her off at her sister's home in Mt. Pleasant and pointed out the road where her sister lived. [Appellant] said no, that he would rather speak to Barron face to face when he returned Humberson home. At a stop light, Humberson attempted to get out of the car but [Appellant] produced a knife and placed it near her leg. Humberson stated that [Appellant] also said, "Don't get out, don't make a scene. I don't want to hurt you."

[Appellant] kept driving and got lost. Humberson tricked him into going back toward Somerset and, when they arrived back at [Appellant's] house, he circled around it to make sure the police were not present. After stopping for gas, [Appellant] continued to drive toward Somerset until he struck a snow bank and the car became disabled. [Appellant] coasted the car down a hill and Humberson located a home at which a friend lived. She asked to go in and call her mother and, after arguing with her, [Appellant] accompanied her to the home. Neither party told the residents of the home [whose last name was Stahl] what had been going on and Humberson stated that she did not make a plea for help because she was afraid. She called her mother who told her that the police were at the Barron home [because the mother had reported Humberson missing]. She arranged to meet her mother at [Appellant's ] car. When she told Appellant that the police were at Barron's home, [Appellant] started getting agitated.

Barron arrived followed by Trooper Durbin. By this time it was daylight. Derbin testified that [Appellant] was seated inside a white Grand Am and Humberson was standing outside the car appearing to be agitated and in a hurry to get to Barron's car. He stated [that] Barron was yelling at [Appellant] who alighted from the car. The Trooper took Humberson aside to question her about the incident. After hearing Humberson's version of the events and verifying that she did not know where the knife was, Derbin evaluated the situation and told Humberson and Barron to get into Barron's car. He told [Appellant] to stay out of his car and had him produce his driver's license, then called for assistance.

While waiting approximately 20 minutes for assistance, Derbin noted that [Appellant] was becoming more agitated. When Trooper Domen arrived, Derbin briefed him and both approached [Appellant], telling him to put his hands on the roof of his car. As they told him they were taking him back to the barracks and sought to place him in handcuffs, [Appellant] removed his hands from the roof and attempted to flee. The Troopers held onto [Appellant] as they struggled from [Appellant's] car onto the hood of one of the police cars then out into the middle of the road. The Troopers attempted to use pepper spray but [Appellant] continued struggling and swearing at them. [Appellant] regained his feet and all three men ended up on the hood of Barron's car and then rolled into a snow bank. [Appellant] lay in the snow, face down, with his arms under him so that the Troopers could not handcuff him. They attempted to use pressure points to

3

subdue him to no avail.  They attempted to use the pepper spray again until it froze in the 5 degree cold.  The Troopers kept [Appellant] pinned to the ground until Trooper Thomas and Corporal Bowman arrived.  All four Troopers had to assist to get [Appellant] handcuffed.  The struggle with [Appellant] lasted 15 to 25 minutes.

During the pat-down search prior to [Appellant's] attempt to flee, a screwdriver and roll of duct tape were recovered from his jacket pocket.  After [Appellant] was subdued, while preparing to transport [Appellant] to the police barracks, Corporal Bowman asked [Appellant] for permission to search his car.  After Appellant [sic] consented to the search verbally, the knife was found on the floor of the back of [Appellant's] car, behind the driver's seat.

By verdict entered October 24, 2003, [Appellant] was convicted by a jury of Unlawful Restraint, a felony of the second degree, Simple Assault, a misdemeanor of the second degree, and Resisting Arrest, also a misdemeanor of the second degree.  On October 18, 2003[, Appellant] was sentenced on all three charges to an aggregate sentence of not less than 6 years nor more than 14 years in a State Correctional Institution.

Superior Court slip op., ECF No. 28-1 at 220 to 223 (footnotes omitted) (quoting from PCRA

Trial Court opinion, 10/31//08, at 2 to 5).

## B.  PROCEDURAL HISTORY

At trial Petitioner was represented by the Somerset Public Defender's Office in the

person of Attorney Michael Kuhn, apparently a part time employee of that office with his own

private practice as well.  Attorney Kuhn also represented Petitioner on direct appeal.[1]  The

---

[1]  In the Direct Appeal, Attorney Kuhn raised the following four issues to the Superior Court in the appellate brief:

1.  Whether Somerset County has jurisdiction to hear this case, or whether the better locale would be in Westmoreland County.
2.  Whether the lower court judge should have ordered a mistrial when requested by defense attorney two separate times during trial [due to witnesses unexpectedly referring to Petitioner's electronic ankle monitor which would permit the inference that Petitioner had a criminal history].
3.  Whether the Commonwealth met its burden to prove beyond a reasonable doubt each and every element of each crime charged.
4.  Whether the lower court abused its discretion when it based its sentence on the

(. . .footnote continued)

Superior Court affirmed the conviction. ECF No. 29-1 at 133 to 144. On January 15, 2005, the

Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. ECF No. 40 at 4 to 5.

On January 7, 2005, Petitioner filed a Post Conviction Relief Act ("PCRA") Petition on

the pre-printed form utilized in the State Courts. ECF No. 28-1 at 232 to 251. Petitioner raised

many issues in the PCRA Petition and on January 11, 2005, Attorney Joseph Policicchio was

appointed to represent Petitioner in the PCRA proceedings.[2] Evidentiary hearings were

conducted by the PCRA trial judge, who was also the trial judge who presided over Petitioner's

criminal trial and sentencing. The PCRA petition was denied by the PCRA trial court.

Petitioner, through Attorney Policicchio, filed an appeal to the Superior Court. Attorney

Policiccihio filed his Concise Statement of Matters Complained of On Appeal ("the Concise

Statement") on October 6, 2008.[3] The PCRA Trial Court issued its opinion explaining its denial

---

pre-sentence investigation package which included irrelevant and prejudicial statements regarding an incident in which no criminal charges were ever brought.

Superior Court slip op., ECF No. 29-1 at 136.

[2] In the PCRA Petition, many claims were raised, which are same or similar to the claims that Petitioner appears to raise in this Petition and Amended Petition. Compare ECF No. 28-1 at 232 to 251 with ECF No. 5. It does not appear Attorney Policicchio filed a counseled amended PCRA petition. It is difficult to tell what the exact issues which Petitioner is raising herein by just reading the habeas Petition even in conjunction with the amended habeas Petition because the habeas Petition lists the issues rather cursorily, ECF No. 5 at 7¶ 13, and the Amended Petition purports merely to add facts in support of the claims. ECF No. 6 at 1. Perhaps the most lucid and concise presentation of Petitioner's issues is to be found in the PCRA Petition. ECF No. 28-1 at 232 to 251.

[3] In the Concise Statement, Petitioner appears to raise many of the same issues therein as he raises in the present Petition. We cannot be completely sure because the copy of the Concise Statement provided to this Court by the Somerset County District Attorney's Office is missing a page. See ECF No. 28-1 at 182 to 183. It is precisely for this reason that the Court orders the District Attorneys' offices to provide this Court with the original state court record, as the

(. . .footnote continued)

5

of PCRA relief. ECF No. 29-1 at 1 to 7.   In the appellate brief filed in the Pennsylvania Superior Court, Attorney Policicchio winnowed the issues down to just two issues, namely:

> I. Was trial counsel ineffective in failing to file a suppression application to challenge the search of Appellant's vehicle and in failing to object to certain items at trial which were not admitted into evidence?
> II. Was trial counsel ineffective by failing to call as witnesses various individuals who were disclosed to trial counsel by Appellant, in particular one Dustin Barron?

ECF No. 28-1 at 223 to 224.   The Superior Court affirmed the denial of PCRA relief.  ECF No. 28-1 at 220 to 230.   Petitioner, through Attorney Policicchio, then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which denied it on October 7, 2009.

Petitioner then initiated the present proceedings in this Court.  He filed a Petition for Writ of Habeas Corpus, ECF No. 5, on December 16, 2010.  He then filed an Amended Petition on January 10, 2011.  Although he entitled it an Amended Petition, the Court deems both the Petition and the Amended Petition taken together to constitute the effective Petition as it is clear that by means of the Amended Petition, Petitioner did not intend to supplant the Petition but merely to supplement the Petition.

The District Attorney was ordered to file an Answer, ECF No. 8, but failed to do so, requiring the Court to issue an Order to Show Cause.  ECF No. 11.  The District Attorney filed a response to the Order to Show Cause, ECF No. 12, in which the District Attorney's Office cursorily addressed the Petition, asserting that Petitioner has not shown he exhausted his state court remedies.  ECF No. 12 at 3.  The Court then ordered the District Attorney's Office to file a fuller answer and to cause the original State Court record to be transmitted to this Court.  ECF

---

District Attorney was ordered in this case, ECF No. 20, and which the District Attorney failed to do.

No. 13.   The District Attorney's Office filed an Answer, ECF No. 15, which again solely addressed the defense of non-exhaustion.  Id. at 6 to 7 ("Since the exhaustion issue is dispositive at this point, respondent will not address the merits of petitioner's claims unless this Court directs to the contrary.").  At this point the case was referred to a different Magistrate Judge.  ECF No. 16.  Petitioner filed a Traverse, ECF No. 17.   The District Attorney was again ordered to cause the original State Court record to be transmitted to this Court.  ECF No. 20.

On January 17, 2013, Petitioner filed a Motion for Judgment on the Pleadings.  ECF No. 21.  The following day the Court ordered the District Attorney's Office to file a response by February 18, 2013.  Subsequently, Petitioner filed a brief in support of the Motion.  ECF No. 22.  The District Attorney's Office failed to file its response to Petitioner's Motion for Judgment on the Pleadings and consequently, Petitioner filed a Motion for Default.  ECF No. 23.   The District Attorney's Office, now occupied by a different District Attorney, filed a Response, explaining the failure of the District Attorney's Office to respond to Court orders by noting that "all emails on this matter were sent to Attorney Spangler's [i.e., the former District Attorney] email account and not forwarded to anyone's attention."  ECF No.  24 at 1.  Catherine Ann Primavera-Zakucia of the Somerset County District Attorney's Office entered her appearance on behalf of the Respondents.  ECF No.  25.   The District Attorney's Office then filed copies of much of the State Court record.  ECF Nos. 28, 29, and 30.

Petitioner filed a Renewed Motion for Sanctions.  ECF No. 31.  The Court denied Petitioner's Renewed Motion for Sanctions, his Motion for Judgment on the Pleadings and other various motions.  ECF No. 32.  Petitioner also filed a Motion for Appointment of Counsel, ECF No. 33, which the Court denied.  ECF No. 34.   The Court then ordered the District Attorney's

Office to file a more complete Answer and specifically directed the District Attorney's Office to address Petitioner's contentions regarding his excuse for any procedural default and to also address Petitioner's claims on the merits. ECF No. 35. The District Attorney's Office requested a 30 day extension of time in which to file the more complete Answer, ECF No. 39, which was granted, with the caveat that no further extensions would be granted. The District Attorney's Office filed the more complete Answer on September 11, 2013. ECF No. 40.

Shortly thereafter, Petitioner filed two motions on the same day, a Motion for Expansion of the Record, ECF No. 41, and a Motion to Strike the more complete Answer that had been filed at ECF No. 40. ECF No. 42. The Court denied Petitioner's Motion to Strike and directed a response from the District Attorney's Office to Petitioner's Motion for Expansion of the Record. ECF No. 43. The District Attorney's Office filed its response. ECF No. 45. The Court then granted in part and denied in part, Petitioner's Motion for Expansion of the Record. ECF No. 46. The Court granted the Motion to the extent that the Respondents were required to provide to Petitioner and this Court, transcripts of the closing arguments and the trial Court's jury instructions but denied it in all other respects. ECF No. 46.

Petitioner then filed an Affidavit in support of the habeas Petition. ECF No. 53. Petitioner also filed Exhibits in Support of the Petition. ECF No. 54. Petitioner also filed a Motion to allow the transcripts of his 1980 trial for rape to be included in the record of this case. ECF No. 55. The Court ordered a response from the District Attorney's Office to the Petitioner's Motion to Allow the 1980 transcripts. The District Attorney's Office filed a Response, opposing the addition of the 1980 transcripts. ECF No. 56. The Court denied Petitioner's Motion to include the 1980 transcripts. ECF No. 57. The Petitioner then filed another exhibit in support

of the Petition, which was a sample contract entered into by those required to undergo sex offender's treatment. ECF No. 59.

As noted above, the Honorable Kim R. Gibson, recently recused himself from this case on January 29, 2014. ECF No. 60. The case was then assigned to this author.

On February 21, 2014, Petitioner filed a Motion for Order Directing DNA testing on evidence from his 1980 rape conviction, ECF No. 62, and a Brief in Support. ECF No. 63.

## C. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. §2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the

9

Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197. Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. Williams, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable. Matteo, 171 F.3d at 890.

AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

10

**D. DISCUSSION**

     **1.**      **Petitioner Fails to Show that the State Courts' Disposition of the Claims that were not Procedurally Defaulted was Contrary to or an Unreasonable Application of United States Supreme Court Precedent.**

On appeal, the Pennsylvania Superior Court affirmed the denial of PCRA relief, finding

that Petitioner failed to carry his burden to show that trial counsel was ineffective with respect to

the following two issues that Petitioner raised on appeal in the Superior Court and which he also

raises in the present Petition:

> I. Was trial counsel ineffective in failing to file a suppression application to
> challenge the search of Appellant's vehicle and in failing to object to certain items
> at trial which were not admitted into evidence?
> II. Was trial counsel ineffective by failing to call as witnesses various individuals
> who were disclosed to trial counsel by Appellant, in particular one Dustin Barron?

ECF No. 28-1 at 223 to 224. Although not entirely clear from the Petition and the Amended

Petition, it does appear from the record that Petitioner is raising these very same claims in the

present proceedings. See ECF No. 5 at 7, ¶ 13 (raising claims of ineffective assistance of

counsel based upon, *inter alia*, "suppress of evid., subpoena witness").

The Superior Court addressed on the merits the issue of alleged ineffectiveness of trial

counsel. In reviewing Petitioner's ineffective assistance claims, the Pennsylvania Superior Court

applied the three pronged test for ineffective assistance of counsel, ECF No. 28-1 at 224, citing

Commonwealth v. Gonzalez, 858 A.2d 1219, 1222 (Pa. Super. 2004)), which is utilized in

Pennsylvania state courts and is derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa.

1987).

The Pierce standard has been found to be materially identical to the test enunciated in

Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States

11

Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204. Because the state courts decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of Werts, Petitioner is barred from arguing that the decisions of the state courts, applying the Pierce standard, are contrary to the standard announced in Strickland. Petitioner could argue the second sense of "contrary to," i.e., the state courts reached a different result from that of the United States Supreme Court on a set of materially indistinguishable facts.

However, Petitioner fails to carry his burden to show that there existed precedent from the United States Supreme Court at the time that the state courts rendered their decisions in this case, that have a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the state courts herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Indeed, even assuming that Strickland had a set of facts that are materially indistinguishable from the facts of Petitioner's case, the outcome of Strickland

and the outcome in Petitioner's appeal in the Superior Court were the same, i.e., the criminal defendant was denied relief in both cases. Accordingly, Petitioner has not shown that the Pennsylvania Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court.

Therefore, it remains open for Petitioner to show that the decisions of the state courts were an unreasonable application of federal law.

However, Petitioner fails to demonstrate that the state courts' disposition of his claims was an unreasonable application of United States Supreme Court precedent. In Strickland, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the United States Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the Superior Court addressed the above two claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA, which results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— ,129 S.Ct., at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

Premo v. Moore, __ U.S. __, __, 131 S.Ct. 733, 740 (2011) (quoting Harrington v. Richter, 131 S.Ct. 770, 788 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal

14

habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'").

Applying this doubly deferential standard, we find Petitioner fails to carry his burden to demonstrate that the Superior Court's disposition of his above two claims of ineffectiveness constituted an unreasonable application of United States Supreme Court precedent.

### a. Alleged ineffectiveness for failing to file a suppression motion

As to the issue of whether Attorney Kuhn was ineffective for failing to file a motion to suppress challenging the police search of Petitioner's car, the Superior Court reasoned that Petitioner gave verbal consent to allow the police to search the car and that the consent was voluntary and knowing in that the police read Petitioner the Miranda warnings. ECF No. 28-1 at 226 to 227. Given that the Superior Court found Petitioner validly consented, the Superior Court concluded that there was no meritorious basis for Attorney Kuhn to file a suppression motion. This is an eminently reasonable disposition of such an ineffectiveness claim. Werts v. Vaughn, 228 F.3d at 202 ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

To the extent Petitioner challenges the State Courts' factual determination that Petitioner was in fact given Miranda warnings and that he in fact did give verbal consent, see Traverse, ECF No. 17 at 7, ¶ 37, we find that he has failed to rebut the presumed correctness of the State Court's factual findings. See, e.g., Trial Transcript, ECF No. 30-1 at 148, lines 17 to 18 (Corporal Bowman testified that "I got in the [state trooper] vehicle and I advised Mr. Lenhart of his rights and Miranda warning."); id. at 149, lines 3 to 8 (testifying that the troopers asked Petitioner if he would sign a waiver to search Petitioner's car and also that Petitioner consented

15

to the search of his car).

The Superior Court also addressed the issue of Attorney Kuhn being allegedly ineffective for failing to object to the presence of a roll of duct tape and a screw driver on the Commonwealth's table during trial. The Superior Court essentially found that the Petitioner failed to carry his burden to show that Attorney Kuhn lacked a reasonable basis for not objecting. As counsel is presumed effective, there must be affirmative evidence of record to show that counsel lacked a reasonable basis. The Superior Court's determination that Petitioner failed to adduce evidence to rebut the presumption is not an unreasonable application of then extant United States Supreme Court precedent.

We are given pause however insofar as Attorney Kuhn testified that he did not think that the presence of the duct tape and screw driver were prejudicial even though he had filed a motion to prevent the admission of these items into evidence. Given that Attorney Kuhn thought they were either prejudicial enough and/or irrelevant enough so as to be excludable, it is not clear why he would not object to their presence even if he thought their mere presence was not prejudicial. One might ask rhetorically what cost to the defense would there have been to make a discreet objection at side bar and have those items removed.

However, even if Petitioner could show that the state courts' reasoning was contrary to or an unreasonable application of United States Supreme Court precedent with respect to this particular claim of Attorney Kuhn's ineffectiveness, such would not be sufficient to merit relief, Petitioner would still have to show that Attorney Kuhn's failure to object to the mere presence of

these items caused him prejudice i.e., that his Sixth Amendment rights were violated.[4]   Even if

we were to review this claim of ineffectiveness *de novo*, we would conclude that Attorney

Kuhn's failure to object did not cause prejudice to Petitioner in light of the other evidence of his

guilt.  We do so in reliance in large part on the victim's testimony, which although attacked by

Attorney Kuhn as incredible, was apparently accepted by the jury as true.   Accepting the

---

[4] Saranchak v. Beard, 616 F.3d 292, 309 (3d Cir. 2010), wherein the United States Court of Appeals for the Third Circuit explained as follows:

> However, the *Strickland* standard differs from that applied by the Pennsylvania Supreme Court on the issue of prejudice in this case. That Court employed a subjective review of the evidence introduced at the PCRA hearing and analyzed the effect it would have had on the judge presiding, and acting as factfinder, at the degree of guilt hearing. *See Saranchak*, 866 A.2d at 300–01 (noting that "the court, nevertheless, would have returned" the same verdict, and highlighting the fact that the PCRA judge was also the judge at the degree of guilt hearing). It upheld the PCRA court's decision by considering the effect the new evidence would have had on that particular judge—Judge Dolbin—rather than considering, more abstractly, the effect the same evidence would have had on an unspecified, objective factfinder, as required by *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052 ("The assessment of prejudice.... should not depend on the idiosyncracies of the particular decisionmaker....").
>
> This fact does not mandate that Saranchak's petition be granted. That the state court evaluated the evidence in a manner other than as the Supreme Court requires does not ipso facto entitle Saranchak to a new trial. He "is not entitled to relief in the federal courts unless he can show that he was in fact denied effective assistance of counsel, not merely that the state courts" applied a different standard. *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003). Saranchak must still establish that his lawyer's deficient performance prejudiced him and thereby violated the Sixth Amendment. See 28 U.S.C. § 2254(a). We conclude that even under a non-deferential, de novo review of the state court's determination, Saranchak has not carried that burden.

(footnote omitted).

victim's testimony as true, we conclude that Petitioner fails to show that Attorney Kuhn's failure to object to the mere presence of the duct tape and screw driver at that table was prejudicial, which is to say, Petitioner fails to convince the Court that had Attorney Kuhn objected to their presence, there is a reasonable probability that the outcome of the trial would have been different.

### b. Ineffective for failing to call witnesses

Next the Superior Court found that Attorney Kuhn was not ineffective for failing to call certain witnesses including Petitioner's parole agent Nila Schreckengost, Connie Nearhoof, Roger Woolley, Sally Stahl, and most especially, Dustin Barron, the victim's brother.

The Superior Court noted that in order

> [t]o prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the [appellant] must show: (1) that the witness existed; (2) that the witness was available ; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

ECF No. 28-1 at 228 (quoting Commonwealth v. Brown, 767 A.2d 576, 581-82 (Pa. Super. 2001)). The Superior Court then went on to note that with respect to not calling Petitioner's witnesses, one or the other of these above requirements was absent. The Superior Court's disposition in this regard was neither contrary to nor an unreasonable application of then extant United States Supreme Court precedent. See, e.g., Armstead v. Colleran, No. CIV.A. 02-CV-1216, 2003 WL 22436232, at *9 (E.D. Pa., Oct. 24, 2003)("To prove that counsel was ineffective for failing to call a witness, then, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the

18

absence of the witness was so prejudicial as to have denied petitioner of a fair trial.")(citing in support Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F.Supp.2d 451, 474 (M.D.Pa. 2000), aff'd, 275 F.3d 33 (3d Cir. 2001)); Fithian v. Shannon, No. CIV.A. 02-1861, 2002 WL 1636004, at *4 (E.D.Pa. July 23, 2002)(finding that the Superior Court's application of the test of ineffectiveness for failure to call a witness, which was the very test used by the Superior Court herein when affirming the PCRA trial court, was "neither contrary to nor an unreasonable application of federal law").

More specifically, as to Attorney Kuhn's failing to call Petitioner's parole agent, Attorney Kuhn testified that he did not want to do so because it would have informed the jury of Petitioner's criminal background. Accordingly, the Superior Court determined that Attorney Kuhn had a reasonable basis to effectuate his client's interest. This is an eminently reasonable disposition notwithstanding Petitioner's theory of the case that the whole prosecution was a trumped up affair conceived of and executed by his parole agent out of personal animus for Petitioner. See Sentencing Hearing Transcript, ECF No. 29-1 at 36 to 51 (Petitioner's allocution at sentencing explaining his grand theory of the case); ECF No. 6 at 8 to 14; ECF No. 51 at 1 to 2; ECF No. 53 at 5; ECF No. 58 at 3, ¶ 7.

As to Attorney Kuhn's failure to call Holly Rock, the Superior Court noted that Petitioner "did not give an address or phone number for Holly Rock, and, although he [i.e., Attorney Kuhn] attempted to locate her, he was unsuccessful." ECF No. 28-1 at 228. This Court notes that it appears Holly Rock is Petitioner's sister. ECF No. 30-1 at 23, lines 18 to 25; ECF No. 30-1 at 314, lines 10 to 17. The Superior Court concluded with respect to all of the witnesses other than Dustin Barron that "[a]s indicated by the foregoing testimony [of Attorney Kuhn], these five

witnesses were either unavailable or Attorney Kuhn thought the testimony would be cumulative

or prejudicial to Appellant at trial.  Therefore, we find trial counsel was not ineffective for failing

to call the above five witnesses.  *See Brown,* 767 A.2d at 581-82 (to prevail on a claim of

ineffectiveness, Appellant must show that witness was available and that absence of testimony

prejudiced Appellant.)."  ECF No. 28-1 at 229.   Petitioner has simply failed to show that the

Superior Court's disposition was contrary to or an unreasonable application of then extant United

States Supreme Court precedent.

    We turn next to Petitioner's claim that Attorney Kuhn was ineffective for failing to call

Dustin Barron who was the victim's brother.  Petitioner asserted in the State Courts and he also

asserts here as well, that Dustin would have testified to the fact that the knife found in the car

came from Dustin Barron's home and that Dustin had used the knife in order to fix Petitioner's

car.  Petitioner asserts this although there was no affidavit from Dustin, only Petitioner's word

and despite the fact that Dustin did not testify at either the trial or at the PCRA hearing.  Hence,

the only record evidence of what Dustin's testimony would be comes from the person of

Petitioner.

    The Superior Court addressed this claim as follows:

> Attorney Kuhn indicated that he wanted Dustin to testify, but was unable to locate
> him despite several attempts. . . Attorney Kuhn prepared several subpoenas, and
> contacted two different school districts, the district attorney's office, and Dustin's
> mother in his attempt to locate the witness.  The PCRA court continued the
> hearing in order to allow the parties the opportunity to locate Dustin and compel
> him to testify.  Dustin was never located, and, accordingly, he never testified on
> Appellant's behalf.  Because Appellant failed to prove that Dustin was prepared
> to cooperate and would have testified on his behalf, we find no ineffectiveness of
> trial counsel for his inability to call Dustin to the stand for testimony.

ECF No. 28-1 at 229 (citations omitted).  Again, Petitioner simply fails to carry his burden under

the AEDPA to show that the Superior Court's disposition merits him relief.

**2. Petitioner Has Procedurally Defaulted the Remaining Claims.**

As to all of the remaining claims Petitioner appears to raise in his Petition and Amended Petition, we find them to be procedurally defaulted and we find that Petitioner failed to show cause and prejudice or a miscarriage of justice.

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes). The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief." Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992). See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

There are two exceptions to the procedural default doctrine. A federal legal issue that

was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000) (citations and some internal quotations omitted).

The second exception to the procedural default doctrine permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts v. Vaughn, the Court explained this exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995)

22

(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999); McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278, at *3 n.3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

We find that Petitioner procedurally defaulted all of his claims other than the two ineffective assistance of trial counsel claims addressed above, based upon Petitioner's failure to raise them in the brief filed in the Superior Court on his appeal in the PCRA proceedings. Sistrunk v. Vaughn, 96 F.3d 666, 671 n. 4 (3d Cir.1996) ("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court."); Godfrey v. Patrick, CIV.A. 05–1106, 2006 WL 3692598, at *11 (W.D.Pa., Dec. 12, 2006) ("Because this rule of waiver [for failing to raise an issue in the Superior Court] was consistently applied, at least since 1992 and thereafter up to the time Petitioner filed his appeal brief in the Superior Court, i.e., October 29, 2003, it constitutes an 'adequate' state procedural rule for purposes of procedural default.") (footnote omitted);

Barrett v. Patrick, NO. CIV.A. 05–370J, 2006 WL 2077019, at *6 n. 7 (W.D.Pa., July 24, 2006) ("Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised at trial or on appeal is waived. Moreover, Pennsylvania's rule of waiver for failing to raise an issue on appeal is 'independent' of any federal law question.") (citations omitted).[5]

### a. **Martinez v. Ryan does not provide "cause"**

Petitioner does invoke the cause and prejudice exception. ECF No. 5 at 13; ECF No. 33 at 3, ¶ 13. Petitioner attempts to rely on the alleged ineffective assistance of PCRA counsel as cause for the procedural default of those claims not raised in the PCRA appeal to the Superior Court. See ECF No. 17 at 8 ("because of my lawyers [sic] ineffective and imprudent representation . . ."). Petitioner seemingly invokes the case of Martinez v. Ryan, 132 S.Ct. 1309 (2012) so as to excuse his procedural default based upon a claim that his PCRA counsel rendered ineffective assistance of counsel. ECF No. 44 at 2, ¶ 6; ECF No. 51 at 3, ¶ 6. However, Petitioner does not meet his burden under Martinez.

In Martinez, the United States Supreme Court held, as an equitable matter, and not as a constitutional matter, that the ineffective assistance of post-conviction relief counsel at the initial hearing level (what we will refer to herein as the "PCRA trial level") could provide "cause" so as to excuse the procedural default of a claim of trial counsel's ineffectiveness, where the post-

---

[5]  Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), *abrogated on other grounds by,* Beard v. Kindler, 130 S.Ct. 612 (2009). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .").

conviction proceedings were the first opportunity under state law to raise claims of ineffective assistance of trial counsel.  Martinez, 132 S.Ct. at 1313-21.

However, Martinez only applies in very limited circumstances, to wit, those circumstances where state law requires one to raise claims of ineffective assistance of trial counsel in a post conviction attack.  See Martinez, 123 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding [i.e., at the PCRA trial level], a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").  In Petitioner's case, state law required that claims of trial counsel's ineffectiveness be raised in the PCRA proceeding.   Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).  So, as to claims of trial counsel's ineffectiveness, Martinez might serve to excuse any procedural default of such claims of trial counsel's ineffectiveness if Petitioner can establish: 1) that his PCRA counsel was ineffective at the PCRA trial level concerning a claim of ineffective assistance of trial counsel and then 2) the federal habeas court finds that the procedural default of a claim of trial counsel's ineffectiveness occurred at the PCRA trial level and 3) that the procedural default which occurred at the PCRA trial level is raised as a bar to reaching the merits of the ineffective assistance of trial counsel claim.

We find that Petitioner fails to show Martinez establishes cause to excuse the procedural default of his claims of trial counsel's ineffectiveness.  As to his claim that Attorney Kuhn had a conflict of interest, state law did not require that Petitioner wait until the PCRA proceedings to raise such an issue and thus, Martinez does not apply to such a claim.  As to all other possible

issues, this Court finds them to be procedurally defaulted due to PCRA counsel's failure to raise them in the appeal to the Pennsylvania Superior Court, and <u>Martinez</u> only applies to claims of PCRA counsel's actions or inactions at the PCRA trial court level, not at the PCRA appellate level.

Petitioner raises a claim that his trial counsel had an actual conflict of interest merely because Attorney Kuhn was employed by the Public Defender's Office in his capacity as Petitioner's lawyer and one of Attorney Kuhn's fellow employees in the Defender's Office was counsel for Petitioner in his 1980 rape case, wherein Petitioner alleged ineffectiveness against that fellow employee. However, <u>Martinez</u> is wholly inapplicable to Petitioner's claim of alleged conflict of interest by Attorney Kuhn. This is because state law did not require such claims of conflicts of interest be raised solely in the PCRA proceedings. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Padilla,</u> 80 A.3d 1238, 1247 n.10 (Pa. 2013) (distinguishing claims of ineffective assistance of counsel which are subject to the rule of <u>Grant</u> (requiring ineffectiveness claims against trial counsel be raised in the PCRA proceedings) but entertaining a conflict of counsel claim on direct appeal). Thus, <u>Martinez</u> does not provide that a showing of ineffective assistance of PCRA counsel would serve as cause because the state law conditions that make <u>Martinez</u> applicable, simply do not arise here in Petitioner's case with respect to the conflict of counsel claim.

In the alternative, even if it were otherwise, and even if there were another claim of cause to excuse this procedural default, we find that Petitioner has not established that Attorney Kuhn was operating under an actual conflict of interest merely because he was employed by the Public Defender's Office in his capacity as Petitioner's lawyer and one of Attorney Kuhn's fellow employees was counsel for Petitioner in his 1980 rape case, wherein Petitioner alleged

ineffectiveness against that fellow employee. Petitioner simply has not established that Attorney Kuhn was operating under an actual conflict of interest under the facts of this case. See, e.g., United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988) ("In order to establish an actual conflict the petitioner must show two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."); Commonwealth v. Sawyer, 454 A.2d 1088 (Pa. Super. 1982) (finding no conflict of interest in a public defender representing a criminal defendant at trial where the criminal defendant was, at the time of the trial, alleging ineffective assistance of another member of the public defender's office in another case where the other case was then on direct appeal); 22 C.J.S. *Crim. Law* § 427 (2013) ("A public defender's office may represent an accused on one charge even though the accused is in the process of challenging the effectiveness of the office's representation in connection with a prior charge."). Petitioner has simply not carried his burden to argue, yet alone show that there existed an alternative defense which was inherently in conflict with or not undertaken due to the Attorney Kuhn's other loyalties or interests or that Attorney Kuhn even possessed other loyalties or interests.

As to the remaining claims, first, Martinez makes clear that the ineffective assistance of PCRA counsel at the PCRA trial level may serve as cause to excuse the procedural default. Here, even if Petitioner were able to establish the ineffectiveness of his PCRA counsel at the PCRA trial level proceedings, such would be irrelevant to our disposition herein because we are

27

not finding a procedural default based on anything PCRA counsel did at the PCRA trial level. Instead, we find a procedural default based on what PCRA counsel did at the appellate level, i.e., raise only the two claims on appeal addressed above and abandon the other claims. Martinez does not provide that ineffective assistance of PCRA counsel at the appellate level of post conviction proceedings can serve as cause to excuse a procedural default. The Supreme Court in Martinez expressly stated that "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial[.]"* 132 S.Ct. at 1320 (emphasis added) (citing Coleman, 501 U.S. at 754; Carrier, 477 U.S. at 488). Therefore, "Martinez offers no support … for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause." Arnold v. Dormire, 675 F.3d 1082 (8th Cir. 2012) (declining to extend Martinez to claims of ineffective assistance in appeals from initial-review collateral proceedings). Accord Johnson v. Warden of Broad River Correctional Inst., __ F.App'x __, 2013 WL 856731, at *1 (4th Cir. 2013); Ramos v. Collins, NO. CIV.A. 13-433, 2013 WL 5429267, at *4 (E.D.Pa. April 23, 2013).

Having failed to show cause and prejudice for his procedural default of his claims, it remains open to Petitioner to show a miscarriage of justice. However, he fails to establish such a miscarriage of justice.

### b. Petitioner fails to show a "miscarriage of justice"

Petitioner invokes the miscarriage of justice exception. ECF No. 5 at 13 to 14; ECF No. 7 at 2, ¶ 4; ECF No. 33 at 3, ¶ 13. The phrase "miscarriage of justice" in the context of a gateway claim[6] has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'"). Moreover, "actually innocent" means factual innocence and not just legal innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of a gateway "actual innocence" claim, a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001). Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of

---

[6]   A gateway claim of actual innocence is a claim that because I am actually innocent of the crimes, the federal habeas court should overlook my procedural default of a federal claim and address the federal claim on the merits.

29

actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." <u>Schlup</u>, 513 U.S. at 329.

Petitioner fails to establish his gateway claim of actual innocence in that he proffers no new reliable evidence of his actual innocence of his 2003 convictions.

### 3. Miscellaneous Claims

In the interest of completeness, we will briefly address two additional issues on the alternative grounds that even if not procedurally defaulted, they are meritless.

The first main issue Petitioner complains about is the alleged improper fact finding by the trial court judge in regards to two claims. Petitioner firstly complains that the trial court judge improperly found that Petitioner had asked the victim to accompany him to find her brother but that the request was made under "false pretenses." <u>See</u> PCRA Petition, ECF No. 28-1 at 242. Secondly, Petitioner claims there were false facts found and/or relied upon in the Pre-sentence Investigation Report in violation of his Sixth Amendment rights. ECF No. 41 at 2, ¶¶ 7 to 9; ECF No. 28-1 at 243.

As to the first claim, Petitioner contends that the trial judge improperly found that he had persuaded the victim to accompany him to find her brother under false pretenses. Petitioner contends that the trial judge did so in order to find that at least one criminal action had taken place in Somerset County so as to make venue there proper, whereas, Petitioner contends venue for his criminal trial was properly in Westmoreland County.

Petitioner apparently refers to the trial court's post sentence opinion, ECF No. 28-1 at 296, wherein the Trial Court wrote:

Although Defendant does not challenge the sufficiency of the evidence to support any of the charges, it is clear to us that Defendant's actions in taking Humberson from her home under false pretenses, driving her around two counties for many hours in the middle of the night, refusing her several requests to be released or returned home, refusing her requests to be taken to her sister's home and refusing to permit her to exit the car by brandishing a knife surely suffice to support the verdicts of Unlawful Restraint, and Simple Assault.

ECF No. 28-1 at 296.

Petitioner fails to show that this passing reference by the trial court to "false pretenses" was necessary to any adjudication or how it constituted any violation of Petitioner's constitutional rights. Even if the reference was unsupported in the record, this would not be sufficient under the AEDPA to merit relief. To the extent that Petitioner is asserting that the trial court's factual finding is an unreasonable determination of the facts, we are not persuaded as Petitioner fails to carry his burden to rebut the presumptive correctness of this finding. Even if the record before the state courts did not affirmatively support such a conclusion of "false pretenses" this would be insufficient under the AEDPA to merit relief. Washington v. Sobina, 509 F.3d 613, 621 (3d Cir. 2007) ("Silence in the record is insufficient to overcome that presumption" of correctness under the AEDPA); Fields v. Thaler, 588 F.3d 270, 278 (5th Cir. 2009) ("Although a lack of fair support in the record was sufficient to rebut a presumptively correct factual finding under pre-AEDPA law, the AEDPA increased the level of deference due to a state court's factual findings."). See Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. Parke, 506 U.S. at __, 113 S.Ct. at 520; Henderson, 426 U.S. at 647, 96 S.Ct. at 2258. . . . His [i.e., the habeas petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the

state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n.6 (W.D.N.Y. 1978) ("In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, No. CIV.A. 3:98-CV-2291-P, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding."). See also Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (the AEDPA standard is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citation and internal quotation marks omitted).

To the extent that Petitioner claims that the trial court's factual finding of false pretenses violates his Sixth Amendment right to have a jury determine all facts, relying upon the progeny of cases from Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); and United States v. Booker, 543 U.S. 220 (2005), the Court is unpersuaded. Those cases dealt with sentencing and factual findings that increased punishment. The only significance of the alleged factual finding of "false pretenses" here by the trial court is that venue was found to be proper in Somerset County. However, venue does not have any impact on punishment under Pennsylvania State law, and so the Apprendi line of cases does not appear to have any applicability to or impact on such a factual determination of "false pretenses." Moreover, even if such a factual finding of false pretenses had an impact on the proper venue determination, such an unsupported finding of "false pretenses" (assuming for the sake of argument that it was unsupported), was harmless. The State Courts' reasoning with regard to venue being proper in Somerset County, found that so long as any criminal activity took place in

32

Somerset County, even if some of the criminal activity took place in another county, venue is proper in Somerset County and the State Courts found that the resisting arrest crime clearly took place in Somerset County.  ECF No. 28-1 at 288 to 291;  ECF No. 29-1 at 136 to 139. Moreover, the Superior Court's decision that venue was proper in Somerset County made no mention of, nor relied upon any factual determination that Petitioner engaged in "false pretenses."  Superior Court slip op., ECF No. 29-1 at 138 to 139.  Hence, any unsupported factual determination by the trial court was harmless error, if error at all.  Accordingly, this claim does not merit Petitioner relief.

As to the second main issue, Petitioner again invokes the Apprendi line of cases, apparently complaining of errors in the Pre-Sentence Investigation Report.  ECF No. 5 at 7, ¶ 13 citing Blakely and Apprendi; id. at 16; ECF No. 41 at 2, ¶¶ 7 to 9.  However, Petitioner does not claim that he was sentenced beyond the statutory maximum for any of the crimes for which he was convicted, which is the situation that the Apprendi line of cases addresses.  Furthermore, because the sentencing guidelines in Pennsylvania are strictly advisory, Commonwealth v. Yuhasz, 923 A.2d 1111, 1117 (Pa. 2007), Petitioner has no Sixth Amendment claim based upon improper factual finding by the trial judge with respect to Petitioner's sentencing under those guidelines.  Cunningham v. California, 549 U.S. 270, 291-92 (2007) (quoting Booker and stating that "'[M]erely advisory provisions,' recommending but not requiring 'the selection of particular sentences in response to differing sets of facts,' all Members of the Court agreed, 'would not implicate the Sixth Amendment.'").  Accordingly, this claim does not merit relief.

Hence, because Petitioner procedurally defaulted all of his claims not raised in the PCRA appeal and because he failed to show that the State Courts' adjudication of his claims was

33

contrary to or an unreasonable application of then extant United States Supreme Court precedent, the Petition will be denied.

**E. CERTIFICATE OF APPEALABILITY**

A Certificate of Appealability should be issued only when a petitioner has made a

substantial showing of a denial of a constitutional right.  28 U.S.C. § 2254(c)(2).

Applying this standard to the instant case, the Court concludes that jurists of reason

would not find it debatable whether this Court was correct in finding the claims to have been

procedurally defaulted and/or in finding that Petitioner failed to carry his burden to show that the

State Courts' adjudication of his claims was contrary to or an unreasonable application of United

States Supreme Court precedent.   Accordingly, a Certificate of Appealability is denied.

All pending motions will be denied as moot.


<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge


cc:    Randy Ross Lenhart
       JF-6684
       SCI Mahanoy
       301 Morea Road
       Frackville, PA 17932

       All counsel of record via CM-ECF